# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**                           **Case No. 24-CR-69**

**TIMOTHY HAWTHORNE,**

    **Defendant.**

---

### ORDER ON REQUEST FOR EVIDENTIARY HEARING ON MOTION TO SUPPRESS (UNLAWFUL ENTRY) AND MOTION FOR RECONSIDERATION ON DENIAL OF EVIDENTIARY HEARING ON MOTION TO SUPPRESS (TRAFFIC STOP)

---

On April 9, 2024, a grand jury sitting in the Eastern District of Wisconsin returned a three-count indictment against Timothy Hawthorne charging him with possession with intent to distribute methamphetamine and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and possession of a machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). (Docket # 1.) Presently before me are two pretrial motions to suppress evidence. Hawthorne moves to suppress evidence obtained from a July 10, 2023 traffic stop and evidence obtained from a warrantless search of his apartment the same day. (Docket # 22; Docket # 23.)

In conjunction with his motion to suppress based on the traffic stop, Hawthorne requested an evidentiary hearing regarding whether one of the officers conducting the traffic stop smelled the odor of marijuana emanating from the vehicle. (Docket # 23 at 5.) In an order dated April 9, 2025, I denied Hawthorne's request for a hearing without prejudice,

concluding that Hawthorne failed to put forth allegations that were definite, non-conjectural, and detailed enough to enable the Court to conclude that a substantial claim was presented and that there were disputed issues of material fact that would affect the outcome of the motion. (Docket # 25.) As to the motion to suppress based on unlawful entry, Hawthorne stated that to the extent that government did not dispute the facts Hawthorne presented, an evidentiary hearing may not be necessary on this motion; however, he requested leave to seek an evidentiary hearing should the government later contest the facts presented. (Docket # 22 at 19–20.)

In the course of briefing these two motions, Hawthorne renewed his request for an evidentiary hearing as to the traffic stop and requested an evidentiary hearing in conjunction with the unlawful entry motion, arguing that the government now contends that Hawthorne did not have a reasonable expectation of privacy in the apartment and thus lacks standing to challenge the search. (Docket # 31 at 4–5.)

For the reasons explained below, Hawthorne's request for an evidentiary hearing regarding the issue of standing is granted. The government will be given an opportunity to respond to Hawthorne's renewed request for an evidentiary hearing as to the traffic stop motion raised in his reply brief. (Docket # 33.)

## BACKGROUND

The facts underlying the motion are taken from Hawthorne's brief. On July 10, 2023, the Milwaukee Police Department ("MPD") conducted a traffic stop of a white Dodge Challenger for a purported window tint violation. (Docket # 22 at 2.) Two MPD officers approached the vehicle. (*Id.*) Officer Thomas Kotnik asked the driver for his name and driver's license. (*Id.*) Hawthorne, who was driving the vehicle, provided Officer Kotnik the requested

information. (*Id.*) Officer Kotnik told Hawthorne that the reason for the stop was the vehicle's window tint and asked Hawthorne whether he knew the level of tint on the windows and who the vehicle belonged to. (*Id.*) Hawthorne replied that the vehicle belonged to his cousin, Shaunice Johnson. (*Id.*) Officer Kotnik then asked Hawthorne whether he had a CCW card and whether he had any weapons in the vehicle, to which Hawthorne responded "no" to both questions. (*Id.* at 2–3.)

Officer Kotnik then asked Hawthorne when he last smoked weed in the car. (*Id.* at 3.) Hawthorne replied that he does not smoke weed. (*Id.*) Officer Kotnik responded, "What's the Ozium spray for?"—referring to the small spray cannister of air sanitizer in Hawthorne's center console. (*Id.*) Hawthorne responded that it was for his "black," i.e., tobacco. (*Id.*) While Officer Kotnik was questioning Hawthorne, his partner, Officer Brandon Rutherford, flashed his light into Hawthorne's vehicle and visually scanned through the window for contraband. (*Id.*) The officers were soon joined by a third MPD officer, Officer Evan Domine. (*Id.*) After several minutes, Officer Rutherford walked around the vehicle and informed Officer Kotnik that he "didn't see anything" inside. (*Id.*) Officer Rutherford then interrupted Officer Kotnik's line of questioning to ask if Officer Kotnik had "tested the windows." (*Id.*) Officer Kotnik then paused his questioning of Hawthorne and retreated to his squad car to retrieve his tint meter. (*Id.*)

As Officer Kotnik walked away from the Challenger, Officer Rutherford asked Hawthorne if his driver's license was "good." (*Id.*) Hawthorne told Officer Rutherford that he had given Officer Kotnik his license. (*Id.*) Officer Rutherford then asked Hawthorne to step out of the vehicle, claiming that Hawthorne's license was suspended. (*Id.*) In his report, Officer Rutherford stated that the basis for his request was because there were undercover

3

officers present, his concern that Hawthorne may be armed, and "the odor of fresh marijuana emanating from the vehicle." Officer Rutherford further explained in his report that he instead "decided to relay to Hawthorne that [he] needed to exit the vehicle because his Driver's License status was suspended . . . with the attempt to keep him calm." (*Id.*)

After asking Hawthorne to step out of the vehicle, Officer Rutherford reached into the vehicle to open the door from the inside. (*Id.* at 4.) At that point, Hawthorne pressed the vehicle's accelerator and the engine revved, though the vehicle did not move. (*Id.*) In response, officers tased Hawthorne, pulled him out of the vehicle, and pushed him to the ground. (*Id.*) A group of officers quickly placed Hawthorne in handcuffs. (*Id.*) After subsequently searching the vehicle, officers recovered a firearm, ammunition, and 3.8 grams of unburnt marijuana in a sealed, airtight, mylar bag in the center console. (*Id.* at 5.)

Officers later proceeded to a nearby apartment where Hawthorne's girlfriend, Melissa Pettis, resides. (*Id.*) The officers' interactions with Pettis are largely captured on the officers' body camera footage. (*Id.* at 6.) The officers did not have a warrant to enter or search the residence. (*Id.*) The parties disagree on the characterization of the interaction, with the government contending that Pettis consented to the officers' entry and search of the apartment and Hawthorne arguing otherwise. In its response brief, however, the government argues as a threshold issue that Hawthorne lacks standing to challenge the search because he told officers that he did not live at the apartment. (Docket # 26 at 12–13.) Hawthorne contests this fact, asserting that Hawthorne kept his belonging in the apartment, regularly slept at the apartment multiple times a week for years, had his name on the utility services, and had slept at the apartment for the entire week preceding his arrest. (Docket # 31 at 5.)

4

## REQUEST FOR EVIDENTIARY HEARING

It is well established that evidentiary hearings are warranted only when the defendant's allegations are definite, non-conjectural, and detailed enough to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact that will affect the outcome of the motion. *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998). As to the unlawful entry motion, the parties' dispute of fact regarding Hawthorne's connection to the apartment warrants the need for an evidentiary hearing. The government contends Hawthorne told officers that he was homeless and that he only "sometimes" stayed at his girlfriend's apartment and that there was no evidence suggesting Hawthorne slept at the apartment that day or even recently. (Docket # 26 at 13–14.) Whereas Hawthorne proffers that Pettis will testify that Hawthorne kept his belongings at the apartment, regularly slept there, and had slept there the entire week preceding his arrest. (Docket # 31 at 5.) He further proffers that the utility services for the apartment were in Hawthorne's name at the time of the search. (*Id.*) An evidentiary hearing is necessary to resolve these factual disputes relevant to the standing analysis.

As to the traffic stop motion, Hawthorne renews his request for an evidentiary hearing as to whether Officer Rutherford smelled the odor of marijuana emanating from the vehicle. In denying the hearing request, I found that Hawthorne did not dispute that marijuana was present in the vehicle, only Officer Rutherford's ability to smell it. I concluded that a desire to cross-examine a witness does not entitle a defendant to an evidentiary hearing and denied the motion. Hawthorne now proffers that studies have shown that one could not reliably detect five pounds of marijuana packaged in a garbage bag when replicating the conditions of a traffic stop; thus, it was effectively impossible for Officer Rutherford to smell just over three

5

grams of fresh marijuana sealed in an airtight mylar bag in the car's center console. (Docket # 33 at 4.) Hawthorne argues that this is bolstered by the fact that none of the officers contemporaneously mention smelling marijuana. (*Id.* at 5.)

Given Hawthorne's renewed request was raised in his reply brief, the government will have until **Monday, May 12, 2025** to file a response to the renewed request.

**NOW, THEREFORE, IT IS ORDERED** that Hawthorne's request for an evidentiary hearing as to the issue of standing in conjunction with his motion to suppress based on unlawful entry (Docket # 31) is **GRANTED**. The parties are ordered to confer and provide the Court will a letter by **May 13, 2025**, estimating the time needed for the evidentiary hearing and the number of witnesses each side intends to call.

**IT IS FURTHER ORDERED** that the government has until **May 12, 2025**, to file a response to Hawthorne's renewed request for an evidentiary hearing based on the traffic stop.

Dated at Milwaukee, Wisconsin this 8th day of May, 2025.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge

6